UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OREGON NATURAL DESERT ASSOCIATION
and CENTER FOR BIOLOGICAL
DIVERSITY,

       Plaintiffs,

   v.

UNITED STATES FOREST SERVICE
and ROGER W. WILLIAMS, Malheur
National Forest Supervisor,

       Defendants,

DAYVILLE GRAZING ASSOCIATION and
OREGON CATTLEMEN'S ASSOCIATION,

       Defendant-Intervenors.

Civil No. 03-381-HA

OPINION AND
O R D E R

Stephanie Parent
Pacific Environmental Advocacy Center
10015 S.W. Terwilliger Blvd.
Portland, Oregon 97219

PAGE 1 - OPINION AND ORDER

Peter M. Lacy
Oregon Natural Desert Association
917 S.W. Oak Street, Suite 408
Portland, Oregon   97205
    Attorneys for Plaintiffs

Val J. Black
United States Department of Agriculture
Office of General Counsel
1734 Federal Building
1220 S.W. Third Avenue
Portland, Oregon   97204

Stephen J. Odell
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon   97204
    Attorneys for Defendants

Karen J. Budd-Falen
Richard M. AuBuchon
Budd-Falen Law Offices, P.C.
300 East 18th Street
P.O. Box 346
Cheyenne, Wyoming   82003

Elizabeth E. Howard
Churchill Leonard Lodine & Hendrie
605 Center Street, N.E.
Salem, Oregon   97308
    Attorneys for Defendant-Intervenors

HAGGERTY, Chief Judge:

This case is brought by plaintiffs Oregon Natural Desert Association and the Center for Biological Diversity (plaintiffs). Plaintiffs seek to prohibit the United States Forest Service (Forest Service) from allowing any livestock grazing on the public lands of the Murderers Creek and Blue Mountain Allotments until the Forest Service is in compliance with applicable environmental laws and regulations pertaining to the grazing.

The two allotments at issue are located on the Malheur National Forest (MNF). This forest is encompassed within the John Day River Basin. Streams within the Murderers Creek Allotment (MCA) and the Blue Mountain Allotment (BMA) are homes to the anadromous Mid-Columbia River steelhead trout, a species listed as threatened under the Endangered Species Act (ESA), and as a designated Management Indicator Species (MIS) on the MNF. The two allotments contain critical habitat for the steelhead, such as riparian vegetation, water quality, temperature, spawning gravel, and safe passage conditions.

This case was filed in March 2003. In December 2004, plaintiffs filed a Third Amended Complaint. In support of their action plaintiffs have submitted strong evidence that the Forest Service's management of livestock grazing has caused ecological damage to the riparian habitats of the MCA and BMA. Intervenors Dayville Grazing Association and Oregon Cattlemens Association (collectively OCA or intervenor) have joined in defense of the grazing management.

**RELEVANT FACTUAL BACKGROUND**

The relevant facts pertaining to this litigation are well-known to the parties and addressed thoroughly in this court's ruling denying plaintiffs' preliminary injunction motion. They need only be summarized here. MNF contains grazing allotments that are governed by a permit system under the Federal Land Policy and Management Act of 1976 (FLPMA). Defendant Forest Service manages livestock grazing on national forests in part through the issuance of grazing permits. Generally, permits are issued for periods of ten years. 36 C.F.R. § 222.3(1).

Additionally, allotment management plans (AMPs) are issued for all grazing allotments. An AMP prescribes the extent of grazing on an allotment and must be consistent with the Forest's Land and Resource Management Plan (Forest Plan or LRMP) for a particular region. It is an allotment-specific planning document that: (1) prescribes how grazing operations will be conducted in order to meet multiple-use and other goals and objectives; (2) describes any range improvements to meet allotment objectives; and (3) contains any other grazing management provisions and objectives prescribed by the Forest Service. 36 C.F.R. § 222.1(b)(2).

The Forest Service also issues annual operating plans (AOPs), now referred to as annual operating instructions (AOIs). An AOI is a signed agreement issued annually by the Forest Service to a permittee that sets final authorized dates of grazing (season of use), pasture and grazing system rotations, numbers of livestock permitted for the upcoming season, monitoring and reporting requirements, and maximum limits of forage use by livestock.

The National Forest Management Act of 1976 (NFMA) imposes a substantive duty on the Forest Service to provide sufficient habitat to maintain viable, well-distributed populations of wildlife species throughout their existing ranges. NFMA directs the Secretary of Agriculture to develop, maintain, and, as appropriate, revise Forest Plans for each unit of the National Forest system. 16 U.S.C. § 1604(a). In developing Forest Plans, the Secretary of Agriculture must use a systematic, interdisciplinary approach to achieve integrated consideration of physical, biological, economic, and other sciences. 16 U. S.C. §

1606(b). Public participation in development and review must also be provided. 16 U.S.C. § 1606(d).

Once approved, the Forest Plan requires compliance with standards and guidelines by individual site-specific projects. Site-specific projects must be evaluated for compliance with the requirements of the National Environmental Policy Act (NEPA), the ESA, and other applicable laws and regulations.

Plaintiffs' evidence suggests that the grazing management on MCA and BMA has failed to meet quantitative standards for stubble height, bank damage, bank stability, shrub use, water temperature, width-to-depth ratio, and pool frequency. Plaintiffs assert that this evidence establishes that the annual grazing authorizations (AOPs and AOIs) from 2000 through 2004 are inconsistent with applicable grazing standards because they fail to demonstrate that the authorized grazing will allow riparian conditions to progress toward the Riparian Management Objectives (RMOs) at a near natural rate.

Plaintiffs allege that the issuance of AOIs over the last five years has been arbitrary and capricious because the Forest Service failed to collect the necessary and relevant monitoring information, including RMO measurement and habitat trend data for MIS. Plaintiffs also allege that the Forest Service's failure to develop current AMPs while nevertheless continuing to issue AOIs is an abuse of discretion and is unlawful.

Because neither NFMA nor NEPA provides a private right of action, plaintiffs challenge the AOIs and the Forest Service's alleged failures to act under the Administrative Procedures Act (APA). *See Ecology Ctr., Inc. v. United States Forest Serv.*, 192 F.3d 922, 924-25 (9th Cir. 1999) (no private right of action in NFMA); 16 U.S.C. §§ 1600-1614;

*Cantrell v. City of Long Beach*, 241 F.3d 674, 679 n. 2 (9th Cir. 2001) (no private right of action in NEPA); 42 U.S.C. §§ 4321-4370d.

The APA provides that "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof," and that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. §§ 702, 704; *see also Earth Island Inst. v. United States Forest Serv.*, 351 F.3d 1291, 1300 (9th Cir. 2003) (judicial review of agency decisions under NFMA is governed by the APA, which specifies that an agency action may be overturned only when it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law).

In their Third Amended Complaint, plaintiffs argue that AOIs issued for MCA and BMA over the last five years constitute final agency actions, and that under Section 706(2)(A) of the APA these AOIs should be deemed "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A).

Plaintiffs also challenge defendants' allegedly unreasonable delays in undertaking legally required agency action, such as adopting AMPs and undertaking NEPA analyses. These challenges are brought pursuant to Section 706(1) of the APA.

Finally, plaintiffs allege that in annually authorizing grazing in its AOIs, the Forest Service has engaged in a pattern, practice or policy of violating NFMA when the grazing: results in noncompliance with Forest Plan standards (Claim Two); is allowed without a collection of adequate and relevant Forest Plan monitoring data (Claim Four); is allowed without first gathering necessary and relevant information regarding steelhead populations

(Claim Six); or is allowed before completely preparing an AMP for the BMA (Claim Eight) or the MCA (Claim Eleven).

STANDARDS

The parties have filed cross motions for summary judgment on the Administrative Record. Summary judgment is appropriate when the record before the court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In cases in which a court is reviewing an agency's decisions pursuant to the parameters of the APA, the function of this court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did. *See City & County of San Francisco v. United States*, 130 F.3d 873, 877 (9th Cir. 1997). The court is responsible for resolving relevant questions of law, interpreting constitutional and statutory provisions, and determining the meaning or applicability of the terms of an agency action. 5 U.S.C. § 706.

It must be acknowledged at this point that jurisdictional arguments first raised and addressed pursuant to plaintiffs' Motion for Preliminary Injunction last year have been brought into play again by the defendants' and intervenor's continued challenges and recent developments in similar litigation. As noted in the ruling on plaintiffs' preliminary injunction motion, the jurisdictional challenges raised in this action are closely similar to arguments asserted before other Judges in *Oregon Natural Desert Association, et al., v. United States Forest Service, et al.*, Civ. No. 03-213-JO (*ONDA I*, 03-213). In that action, these same plaintiffs sought to prohibit the Forest Service and certain intervenors from authorizing, allowing, or conducting any grazing on any portion of the Bluebucket, Dollar

PAGE 7 - OPINION AND ORDER

Basin/Star Glade, Flag Prairie, Spring Creek, North Fork, or Ott allotments that lie within, or is not securely and permanently fenced from, wild and scenic river corridors on the MNF.

The defendants and intervenors in both cases presented a multi-pronged jurisdictional challenge to the plaintiffs' claims. First, the defendants and intervenors dispute whether an AOI is a final agency action capable of judicial review under federal administrative law. A jurisdictional challenge was also brought against the plaintiffs' allegations that the Forest Service failed to implement federal environmental laws in a timely fashion, with the defendants relying in part upon *Norton v. Southern Utah Wilderness Alliance*, 124 S. Ct. 2373 (2004) (*SUWA*), and in part upon recent Congressional action that provided additional time for the Forest Service to perform the environmental assessments. The defendants reiterated that recently adopted Congressional session laws have precluded courts from granting the remedies that plaintiffs seek, by accommodating delay in the timing of when mandatory NEPA analyses must be performed.

When first addressing these jurisdictional challenges in the preliminary injunction ruling, this court concluded that the AOIs plaintiffs are challenging appeared to be discrete, final agency actions pursuant to Section 706(2) of the APA, and that plaintiffs' "unlawful delay" claims fell within the scope of those claims recognized in *SUWA* as valid and viable. Regarding the Congressional session laws in effect at the time, this court adopted the reasoning first offered in *ONDA I*, and concluded that the relevant amendments did not prevent a court from declaring that the Forest Service violated NEPA by issuing grazing permits and by annually authorizing grazing through AOIs without the required analyses,

and that the legislation did not preclude a court from establishing a schedule for NEPA analyses.

At the hearing on dispositive motions in this case the Forest Service acknowledged that "the Government is not contending that in this particular situation, under these circumstances, that the AOIs are not final agency actions," in part out of deference to the earlier ruling in *ONDA I*, 03-213. *See* Pls.' Resp. to Fed. Defendants' Notice of Development in Related Case, Attachment 1 (Excerpt of Transcript from March 11, 2005 Hearing). Counsel was careful to emphasize, however, that he did not intend to indicate that the government agreed with that ruling. *Id*. Instead, the Forest Service asked this court to focus on defendants' challenges to plaintiffs' claims on grounds that they are sweeping criticisms of defendants' grazing management in general, with little or no direct relationship to the AOIs themselves.

Even if the comments from the Forest Service's counsel could be construed as a willingness to waive argument on the question of jurisdiction, this court is obliged to meet a continuing duty to scrutinize an action's jurisdictional bases. The defense of lack of subject matter jurisdiction cannot be waived. *See Billingsly v. Comm'r. of I.R.S.*, 868 F.2d 1081, 1085 (9th Cir. 1989); *see also Spencer Enters., Inc. v. United States*, 345 F.3d 683, 687 (9th Cir. 2003) (courts have a "duty to consider subject matter jurisdiction *sua sponte* in every case . . . ."). Moreover, at the same hearing, OCA subsequently advanced an explicit jurisdictional challenge reiterating their position that AOIs are not final agency actions.

During the ensuing weeks while these motions were under advisement, the court adjudicating *ONDA I* re-examined these jurisdictional challenges. On June 3, 2005, that

court dismissed *ONDA I* without prejudice, determining that the plaintiffs lacked jurisdiction because the AOIs that allow permittees to conduct grazing constitute agency actions, but fall short of qualifying as *final* actions subject to judicial review under Section 706(2)(A) of the APA. Additionally, the plaintiffs' challenges brought under federal environmental laws that impose duties on the Forest Service were viewed as insufficiently discrete to allow a court to compel specific performance. Finally, recent Congressional action targeted at forestalling grazing permit cancellations on grounds that NEPA analysis is lacking was also deemed to foreclose the plaintiffs' claims. *See* Attachment 1 of Fed. Defendant's Notice of Further Development in Related Case.

As was undertaken in *ONDA I*, this court is compelled by the arguments of the parties and the circumstances presented to further scrutinize the jurisdictional underpinning of the action before it. Federal courts are courts of limited jurisdiction. Limits upon federal jurisdiction must not be disregarded or evaded. *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (quoting *Smith v. McCullough*, 270 U.S. 456, 459 (1926) ("[A] plaintiff suing in a federal court must show in [the] pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if [plaintiff] does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment."); Fed. R. Civ. P. 8(a)(1); *see also Thompson v. McCombe*, 99 F.3d 352, 355 (9th Cir. 1996).

ANALYSIS

Following this additional jurisdictional scrutiny, the court is constrained to conclude that the OCA's renewed challenges that assert explicitly that AOIs are not final agency

actions, and defendants' arguments that plaintiffs rely upon AOIs as final actions to level a sweeping, improper challenges to grazing practices are well-taken. The reasoning presented in the June 3, 2005, Opinion and Order in *ONDA I,* 03-213, is sound and fully relevant to the challenges plaintiffs raise in this action.

The requirement that the AOIs targeted by plaintiffs in their Third Amended Complaint constitute final agency actions so that they may serve as a foundation for plaintiffs' Section 706(2)(A) claims is undisputed. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) (where there is no specific authorization in the substantive statute for review, but review is nevertheless sought under the general review provisions of the APA, the agency action in question must be a final agency action).

This requirement is applicable in plaintiffs' NFMA claims asserted in the Third Amended Complaint: Claims One; Two; Three; Four; Five; Six; Seven (as an alternative basis); Eight; Ten (as an alternative basis); and Eleven. In each of these claims there is some variation of an allegation that the AOIs issued for MCA and BMA over the last five years constitute a final agency action that is unlawfully inconsistent with the applicable Forest Plan as required by NFMA. As noted above, in five of these claims (Two, Four, Six, Eight, Eleven), plaintiffs assert that the Forest Service's "pattern, practice or policy of continued authorization of grazing" on the allotments at issue is illegal, but assert that the pattern is evidenced through the issuance of the AOIs.

The Supreme Court teaches that, generally, two conditions must be satisfied for an agency action to be final: first, the action must mark the "consummation" of the agency's decision-making process, and not be merely tentative or interlocutory, and second, the

action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow[.]" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted). The second prong is considered met if the action alters the legal regime to which the action agency is subject. *Id*. at 178.

"[F]inality is to be interpreted 'in a pragmatic way,' meaning that even pre-enforcement regulations that merely state an agency's intentions may be final for review." *Oregon v. Ashcroft*, 368 F.3d 1118, 1147 (9th Cir. 2004) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149-50 (1967)). The Seventh Circuit has ruled that an action is final when "its impact is sufficiently direct and immediate and has a direct effect . . . on day-to-day business." *Home Builders Ass'n of Greater Chicago v. United States Army Corps of Eng'rs*, 335 F.3d 607, 619 (7th Cir. 2003).

The AOIs at issue here are used to prescribe the annual instructions that implement management decisions of the allotment management plans. Forest Service Manual § 2212.3-5. A review of the 2004 AOIs contained in the Third Supplemental Policy Administrative Record (TSPAR) at 1525-1540 establishes that the AOIs at issue are essentially identical to the exemplar used in the *ONDA I* decision; the AOIs state that they are to be used as a supplement to the applicable Grazing Permit, and are intended to implement utilization standards to comply with Forest Service management objectives. TSPAR at 1526; 1531; 1536.

After a searching review of the record in this action, this court concludes that the AOIs at issue fail both prongs of the *Bennett* test – they neither mark any consummation of

the Forest Service's decision-making process, nor establish any rights or obligations or create by themselves potential legal consequences.

As a supplemental tool designed to implement grazing standards and to trigger actions on the part of the permittees, AOIs are not tantamount to consummation of the Forest Service's decision-making. Moreover, they fail to alter the legal regime to which the Forest Service is subject. *Bennett*, 520 U.S. at 178.

For example, permittees who are in non-compliance with an AOI are faced with legal consequences arising from their possession of a Grazing Permit, not an AOI. *See Anchustegui v. Dep't of Agric.*, 257 F.3d 1124, 1127-28 (9th Cir. 2001) (permittee who violated grazing requirements was subjected to an action by the Forest Service to revoke permit, not AOI). This court agrees with the reasoning presented in *ONDA I* that concludes that the AOIs issued pursuant to Grazing Permits do not alter the Forest Service's legal relationship with permittees, but merely implement the standards applicable under the agency's grazing allotment program. Rather than reiterating the point-by-point analysis provided thoroughly in *ONDA I* regarding the scope of an AOI, this court adopts that reasoning by reference and – after examining a sampling of AOIs at issue in this litigation and considering the parties' supplemental briefs submitted after the *ONDA I* decision (*see* Notice of Further Development in Related Case, Doc. 193, filed by defendants, and Plaintiffs' Response, Doc. 194) – finds *ONDA I*'s conclusions fully appropriate here.

Plaintiffs' arguments and Attachments contained in its Response attempt to establish that AOIs should be viewed as final agency actions despite the ruling in *ONDA I*. These arguments have been considered and are rejected.

PAGE 13 - OPINION AND ORDER

Plaintiffs' reliance upon an unpublished "Report and Recommendation" from the United States District Court for the District of Arizona from 2002 is unpersuasive. Even if properly cited within this District's Local Rules, the decision fails to refute the conclusions reached in *ONDA I*. Second, the inclusion of "Level 1 Meeting Notes" from the 2004 grazing season fails to warrant a different result. The Notes were gathered at an April 13, 2004 "Level 1" meeting. Under the subheading "Malheur Forest Grazing Reviews," reference is made to the "range staff" possessing instructions to "modify the proposed actions of the litigated allotments," generally meaning that river corridor pastures would not be grazed and that some livestock could be moved to other allotments. *Id*. Under another subheading titled "Murderer's Creek – LAA/St," the Forest Service's intention not to graze the south and middle herd pastures in 2004 is noted.

Plaintiffs' assertions that these references reveal that the Forest Service treats AOIs as final decision-making points fall short of establishing that the AOIs at issue mark a "consummation" of the agency's decision-making process, and are not tentative or interlocutory, or that the AOIs themselves represent an action in which rights or obligations have been determined. *See Bennett*, 520 U.S. at 177-78. The flexibility demonstrated in the notations regarding possible livestock transfer underscores that the specific AOIs lack the requisite finality and are not the independent sources of legal rights and obligations contemplated by the Supreme Court in *Bennett*.

Accordingly, this court lacks jurisdiction to adjudicate the claims in the Third Amended Complaint that rely upon the issuances of AOIs as allegedly arbitrary and capricious final agency actions (plaintiffs' Claims One; Three; Five; Seven (as an alternative

basis); and Ten (as an alternative basis). As noted above, in five claims (Claims Two, Four, Six, Eight, and Eleven), plaintiffs assert the Forest Service's "pattern, practice or policy of continued authorization of grazing" on the allotments at issue is illegal, but assert that the pattern is evidenced through the issuance of the AOIs. This court lacks jurisdiction to resolve those claims, either to the extent that plaintiffs are relying upon AOIs in those claims as final agency actions, or because a comprehensive study of the Supreme Court's decisions in *SUWA* and *Lujan* and their progeny establishes that plaintiffs are precluded from challenging broad agency policies and programs:

> Thus, a claim under § 706(1) claim can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*. These limitations rule out several kinds of challenges. The limitation to discrete agency action precludes the kind of broad programmatic attack we rejected in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990).
>
> * * *
>
> "[R]espondent cannot seek *wholesale* improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made. Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm." *Id.*, at 891.

*SUWA*, 124 S. Ct. at 2379-80 (emphasis in original).

In *Lujan*, the Court described a programmatic challenge bar in APA cases where the plaintiff has failed to identify a specific "final agency action" that has "an actual or immediately threatened effect." *Lujan*, 497 U.S. at 894. The *SUWA* decision amplified aspects of this and similar reasoning:

> The principal purpose of the APA limitations . . . is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve. If courts were empowered to enter general orders compelling compliance with broad statutory mandates, they

would necessarily be empowered, as well, to determine whether compliance
was achieved – which would mean that it would ultimately become the task
of the supervising court, rather than the agency, to work out compliance with
the broad statutory mandate, injecting the judge into day-to-day agency
management.

*SUWA*, 124 S. Ct. at 2381.

Accordingly, this court lacks jurisdiction on Claims One, Two, Three, Four, Five, Six, Seven (on alternative grounds), Eight, Ten (on alternative grounds) and Eleven.

Claims Seven, Nine, Ten, and Twelve raise challenges based upon defendants' failure to complete required environmental analyses arising from NEPA and allege unreasonably delayed agency action actionable under 5 U.S.C. § 706(1). Specifically, Claims Nine and Twelve assert violations of NEPA (failure to perform required NEPA analysis), and Claims Seven and Ten assert violations of NFMA (failure to develop AMPs accompanied by requisite NEPA analysis.

The purpose and intent of NEPA is to foster better decision-making and to facilitate informed public participation for actions affecting humans and nature. 42 U.S.C. § 4321; 40 C.F.R. § 1501.1(c). The Ninth Circuit recognizes that:

> NEPA imposes a procedural requirement that an agency must contemplate
> the environmental impacts of its actions. NEPA "ensures that the agency. . .
> will have available, and will carefully consider, detailed information
> concerning significant environmental impacts; it also guarantees that the
> relevant information will be made available to the larger [public] audience."

*Idaho Sporting Congress v. Thomas*, 137 F.3d 1146, 1149-50 (9th Cir. 1998) (citations omitted).

There is no dispute among the parties that AMPs and NEPA analyses are required for the grazing at issue. The Forest Service's failure to complete timely NEPA analyses regarding many grazing permits is also undisputed.

As reviewed in this court's preliminary injunction ruling and more thoroughly in the recent rulings in *ONDA I*, Congress addressed the backlog of grazing allotments needing NEPA analysis in 1995 by enacting Section 504 of the Rescissions Act, Pub. L. No. 104-19, § 504, 109 Stat. 194, 212-13 (July 27, 1995). In part, Section 504 provided that schedules for completing NEPA analyses for all allotments within the National Forest System for which a NEPA analysis was required would be agency-set and that "notwithstanding any other law, term grazing permits which expire or are waived before the NEPA analysis and decision pursuant to [such schedules] shall be issued on the same terms and conditions and for the full term of the expired or waived permit." 109 Stat. at 212.

Recent appropriations bills enacted by Congress allow certain grazing permits renewed by 2003 to remain in effect despite any failures to complete NEPA analysis. *See* Pub. L. No. 108-7, 117 Stat. 11, § 328 (February 20, 2003); Pub. L. No. 108-11, 117 Stat. 559, § 2401 (April 16, 2003). On November 10, 2003, the President signed the 2004 Department of Interior and Related Agencies Appropriations Act, Pub. L. 108-108, 117 Stat. 1241. Section 325 of that Act provides that the timing for completing environmental analyses for Forest Service grazing allotments shall be left to the discretion of the agency. For permits renewed prior to 2004, the Act provides that "the terms and conditions of the renewed grazing permit shall remain in effect until such time as the Secretary of Agriculture completes the process of the renewed permit in compliance with all applicable laws and

regulations or until expiration of the permit . . . ." For grazing permits expiring between 2004 and 2008, the Act provides that those permits "shall be renewed" under the same terms and conditions until the agency "completes the processing of such permit or lease in compliance with all applicable laws and regulations, at which time such permit or lease may be canceled, suspended or modified . . . to meet the requirements of such applicable laws and regulations."

After scrutinizing these Congressional actions, the court in *ONDA I* ruled as follows:

> The authority to administer and manage the [NEPA analysis] backlog was left with the applicable agency Secretary:
>
> * * * the Secretaries in their sole discretion determine the priority and timing for completing required environmental analysis of grazing allotments based on the environmental significance of the allotments and funding available to the Secretaries for this purpose * * *
>
> 108 Pub. L. 108, 325. Further, if an agency fell behind in its revised schedule for completing the backlogged NEPA analyses, that delay [does] not invalidate a grazing permit. *See* H.R. Conf. Rep. 108-76, *97-98 Ch. IV, § 2401 (April 12, 2003). Thus, Congress provided for continued grazing on permitted federal allotments under otherwise invalid grazing permits by withholding the need for the requisite NEPA analysis upon the re-issuance of a grazing permit.
>
> Legal consequences remain for violations of a grazing permit's standards but not on the basis of a failure to update a NEPA analysis. *See* H.R. Conf. Rep. 108-76, *98 ("The managers emphasize that this provision does not prevent the Forest Service from taking appropriate action consistent with agency policies and procedures to address violations of permit terms and conditions.") The NEPA requirement for re-issuing a grazing permit has been held in abeyance by Congress with instruction to federal agencies to work on reducing the backlog of NEPA analyses.

*ONDA I*, Opinion and Order of June 3, 2005, at 26.

Following this further examination of the issues presented, this court agrees with the reasoning in *ONDA I* and concludes that Congress has expressly tolled NEPA requirements as they pertain to managing grazing allotments such as those at issue here. Accordingly, plaintiffs' NEPA/delayed analysis claims are foreclosed.

CONCLUSION

For the reasons stated above and similarly expressed in the *ONDA I* Opinion and Order of June 3, 2005, plaintiffs' AOI claims (Claims One; Two; Three; Four; Five; Six; Seven (as an alternative basis); Eight; Ten (as an alternative basis); and Eleven) are dismissed for lack of subject matter jurisdiction. Plaintiffs' "pattern, practice, or policy" claims (Two, Four, Six, Eight, Eleven) are also dismissed on separate grounds as identified above. Plaintiffs' "delayed-environmental-analysis" claims brought pursuant to 5 U.S.C. § 706(1) (Claims Seven, Nine, Ten, and Twelve) are also dismissed on grounds that the Forest Service possesses exclusive authority for establishing the timing for completion of the environmental analyses pertaining to the grazing allotments.

In light of these conclusions, this court need not reach the possible merits of defendants' assertions regarding mootness of some AOI claims; or that the Forest Service may be in compliance with applicable grazing standards and may be sufficiently monitoring grazing practices on MCA and BMA. The court also expresses no opinion regarding the OCA's assertions that plaintiffs may have failed to exhaust administrative remedies, present inadequate pleadings, or that the Forest Service may have been in full compliance with NFMA.

For purposes of clarifying the docket, Plaintiffs' Motion for Summary Judgment (Doc. #112), Intervenors' Motion to Strike Declarations (Doc. #120), Plaintiffs' Motion to Strike Intervenors' Cross Claims (Doc. #168), and Plaintiffs' Motion to Strike Supplemental Ex. A (Doc. #177) are denied as moot. Defendants' Cross Motion for Summary Judgment (Doc. #163) and Intervenors' Motion to Dismiss (Doc. # 139) are granted in part as detailed above. Defendants' Motion to Dismiss Intervenors' Cross-Claim for Lack of Jurisdiction or, in the alternative, to Stay its Consideration (Doc. #171) was granted without prejudice by Minute Order issued March 11, 2005. The remainder of this action is also dismissed without prejudice. Any other pending motions are denied as moot.

IT IS SO ORDERED.

Dated this  20   day of June, 2005.

  /s/Ancer L.Haggerty
Ancer L. Haggerty
United States District Judge